OPINION
{¶ 1} Appellant, Brian J. Halliday, appeals the decision of the Geauga County Court of Common Pleas, Probate Division, denying his application to have the name of Alexander Gabriel Prodan changed to Alexander Gabriel Halliday. For the following reasons, we affirm the decision of the court below.
 {¶ 2} Brian Halliday and Natalie Prodan were married on August 31, 2001. Natalie did not change her surname after marriage. The first child born of the marriage, Robert Severance Halliday II, died after three weeks. By October 2002, Natalie was pregnant a second time.
 {¶ 3} In March 2003, Natalie filed for divorce and left the marital residence to live with her parents. On August 28, 2003, Natalie gave birth to a boy and named him Alexander Gabriel Prodan. Natalie did not consult with Brian before naming Alexander.[1] After his birth, Alexander resided with Natalie and her parents.
 {¶ 4} On September 10, 2004, Brian filed an application to change Alexander's name from Prodan to Halliday in the Probate Court of Geauga County. A hearing on the application was held on February 5, 2005.
 {¶ 5} At the hearing, Brian testified that his "primary argument" for changing Alexander's surname is that there is a "societal norm" that children born in wedlock bear their father's surname. Brian believed that Natalie was trying to "drive a wedge" between him and Alexander and changing Alexander's surname would counteract Natalie's efforts at alienation. Brian argued that changing Alexander's surname would help Alexander understand that he has two parents and that he is considered a part of Brian's family "fully and completely." Brian also noted that Alexander's brother, Robert, bore the surname Halliday.
 {¶ 6} Natalie argued that she was Alexander's "primary attachment figure" and Alexander, seventeen months old at the time of hearing, identified himself as "Alexander Prodan." Natalie further argued that it was proper for Alexander to bear the surname of the residential parent and that Alexander's social security card, as well as all his other legal and medical records, identified him as Prodan.
 {¶ 7} On February 16, 2005, the probate court rendered its judgment denying Brian's application.
 {¶ 8} The trial court found that "neither parent offered convincing evidence that the child would experience discomfort, embarrassment, or inconvenience as a result of having to bear the other parent's surname" and that "neither parent offered convincing evidence that the child's surname would have any significant effect on the ability of either parent to preserve or develop a relationship with the minor child." The court found that "[t]he child not only lacks maturity to be able to state a preference for a surname, the child lacks the maturity to even understand the significance of a surname." The court further observed that the application to change Alexander's name was premature in that the parents' "contentious, bitter divorce" remained pending in Cuyahoga County. Accordingly, the court concluded that Brian had failed to demonstrate that changing Alexander's name would be in his best interest and denied the application.
 {¶ 9} Brian timely appeals and raises the following assignment of error: "The trial court abused its discretion and committed reversible error by denying appellant's application to change his son's surname from `Prodan' to `Halliday.'"
 {¶ 10} The parent of a minor child may file an application in probate court for change of name on behalf of the child. R.C.2717.01(B). Upon showing "reasonable and proper cause for changing the name of the applicant, the court may order the change of name." R.C. 2717.01(A). "When deciding whether to permit a name change for a minor child * * *, the trial court must consider the best interest of the child in determining whether reasonable and proper cause has been established." In reWillhite, 85 Ohio St.3d 28, 1999-Ohio-201, at paragraph one of the syllabus.
 {¶ 11} "In determining whether a change of a minor's surname is in the best interest of the child, the trial court should consider the following factors: the effect of the change on the preservation and development of the child's relationship with each parent; the identification of the child as part of a family unit; the length of time that the child has used a surname; the preference of the child if the child is of sufficient maturity to express a meaningful preference; whether the child's surname is different from the surname of the child's residential parent; the embarrassment, discomfort, or inconvenience that may result when a child bears a surname different from the residential parent's; parental failure to maintain contact with and support of the child; and any other factor relevant to the child's best interest." Id. at paragraph two of the syllabus.
 {¶ 12} A trial court's decision to grant or deny an application for change of name is reviewed under an abuse of discretion standard. In re Willoughby, 11th Dist. No. 2003-L-050, 2004-Ohio-2079, at ¶ 13 (citation omitted).
 {¶ 13} Brian argues the evidence showed that changing Alexander's surname was necessary to promote and develop Brian and Alexander's relationship and that all the factors identified in the Willhite decision favor changing Alexander's name. We disagree.
 {¶ 14} We note that Brian's "primary argument" for changing Alexander's surname, i.e. the societal norm that children bear their father's surname, has been expressly disavowed by the Ohio Supreme Court. In Willhite, the court found the argument that "the child of divorced parents should bear the paternal surname based on custom * * * objectionable." Id. at 32, citing Bobo v.Jewell (1988), 38 Ohio St.3d 330, 334 (characterizing the custom as discriminatory). In the present case, Brian and Natalie had separated and filed for divorce at the time Alexander was born. The argument from custom does not avail Brian.
 {¶ 15} Among the factors to consider set forth in Wilhite,
we agree with the probate court that Alexander is too young to appreciate the significance of his surname. Therefore, the question of Alexander's preference and the possibility of embarrassment, discomfort, or inconvenience are non-issues.
 {¶ 16} Alexander has borne the surname Prodan for all of his relatively short life. Prodan is the name of Alexander's residential parent. Both parents have been active in supporting and raising the child.
 {¶ 17} Regarding the allegations that Natalie is trying to alienate Brian from Alexander's affections, Brian has failed to demonstrate how changing Alexander's name would have any effect on the amount or quality of time that Brian spends with Alexander. The probate court found that, although Natalie failed to comply initially with the visitation schedule, she did not do so out of a desire to alienate Alexander from Brian, but out of concern for Alexander whom she was breast-feeding. The evidence demonstrated that Natalie is currently complying with court-ordered visitation.
 {¶ 18} Although Natalie's arguments for not changing Alexander's surname may be as unconvincing as Brian's arguments for changing it, the burden is on Brian, as the applicant, to show that the change would be in Alexander's best interest. The probate court was within its discretion in holding that Brian failed to meet this burden.
 {¶ 19} Brian's sole assignment of error is without merit. The decision of the Geauga County Probate Court, denying Brian's application for change of name of a minor, is affirmed.
William M. O'Neill, J., Colleen Mary O'Toole, J., concur.
[1] Pursuant to R.C. 3705.09(F), the child of a mother "married at the time of either conception or birth * * * shall be registered [on the birth certificate] by the surname designated by the mother." Cf. Weese v. Griesheimer (March 11, 1999), 4th Dist. No. 98CA2436, 1999 Ohio Appp. LEXIS 1051, at *7: "The General Assembly enacted R.C. 3705.09(F) to enable mothers to give their children any surname they choose. Therefore, the initial determination of a child's proper surname is entirely within the mother's discretion * * *."