[Cite as *Bond v. de Rinaldis*, 2016-Ohio-3342.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Joshua Bond, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 15AP-646 |
| v. | : | (C.P.C. No. 12JU12-16016) |
| Gianna Pandolfi de Rinaldis, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on June 9, 2016

**On brief:** *Joshua E. Bond*, pro se. **Argued:** *Joshua E. Bond*

**On brief:** *Sowald, Sowald, Anderson, Hawley & Johnson, Beatrice K. Sowald* and *Eric W. Johnson*, for appellant. **Argued:** *Eric W. Johnson*.

APPEAL from the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch

KLATT, J.

{¶ 1} Defendant-appellant, Gianna Pandolfi de Rinaldis, appeals a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch. For the following reasons, we affirm that judgment.

{¶ 2} Pandolfi and plaintiff-appellee, Joshua Bond, are the parents of a son named Andrew. Although the parties were engaged for a short period, they never married.

{¶ 3} Andrew was born on September 27, 2012. As Andrew's mother, Pandolfi had the discretion to determine how Andrew's surname would appear on his birth

certificate. *See* R.C. 3705.09(F)(2). Without consulting Bond, Pandolfi chose the surname "Pandolfi de Rinaldis Cano" for Andrew.

{¶ 4} On December 11, 2012, Bond filed a complaint seeking a judgment (1) determining the existence of a parent/child relationship between him and Andrew, (2) changing Andrew's surname to include Bond's surname, and (3) establishing a child custody arrangement and the amount of child support owed. Shortly after filing his complaint, Bond moved for an order allocating the parental rights and responsibilities for Andrew in accordance with the shared parenting plan that Bond filed with his motion.

{¶ 5} The parties submitted to genetic testing, which established a 99.99 percent probability that Bond was Andrew's father. Subsequent to the testing, the trial court issued an agreed judgment entry that determined that a father/child relationship existed between Bond and Andrew. The trial court reserved ruling on the remaining issues in the case.

{¶ 6} On March 19, 2013, the magistrate issued temporary orders requiring Bond to pay child support to Pandolfi and granting Bond parenting time with Andrew. Additionally, at Pandolfi's request, the magistrate appointed a guardian ad litem for Andrew.

{¶ 7} Over the course of five days in November 2013, the parties presented evidence at a hearing before the magistrate. During the hearing, the parties primarily focused on two issues: (1) whether Andrew's surname should be changed, and (2) the appropriate custody arrangement. With regard to Andrew's surname, Bond asked that Andrew bear his surname in addition to Pandolfi's surname. Bond explained that "Cano" was the maiden name of Pandolfi's stepmother. Bond proposed the removal of "Cano" from Andrew's surname and the addition of "Bond" in its place. Pandolfi wanted no change to Andrew's surname.

{¶ 8} With regard to the custody arrangement, Bond sought shared parenting according to the plan that he had submitted to the trial court. That plan gave the parties equal parenting time with Andrew. Pandolfi resisted shared parenting and, instead, asked to be named the sole residential parent and legal custodian of Andrew. Pandolfi planned to return to her home in Puerto Rico, and she wanted to take Andrew with her. She

proposed that Bond would exercise parenting time through video chatting, as well as four face-to-face visits per year.

{¶ 9} The guardian ad litem recommended that the trial court adopt shared parenting, with Bond exercising parenting time every Monday from 5:45 p.m. until Tuesday at 7:30 a.m., every Wednesday from 5:30 p.m. until 7:30 p.m., and alternating weekends from Friday at 5:45 p.m. until Sunday at 6:00 p.m. The guardian also recommended that the parties follow the applicable local rule in determining which parent would have Andrew on the holidays, with the exception that the regular parenting time schedule would apply during winter and summer breaks.[1] Finally, the guardian recommended that the trial court preclude Bond from leaving Andrew alone with Bond's father, Jeffrey Bond.

{¶ 10} The magistrate issued a decision on September 3, 2014. In that decision, the magistrate concluded that a change of Andrew's surname to "Bond-Pandolfi de Rinaldis" was in Andrew's best interest. The magistrate also concluded that shared parenting was in Andrew's best interest. The magistrate, however, did not approve the shared parenting plan that Bond had submitted. The magistrate found the parenting time schedule recommended by the guardian more appropriate for Andrew than the schedule in Bond's shared parenting plan, with one exception. Instead of maintaining the regular parenting time schedule during the winter break, as the guardian recommended, the magistrate found it more appropriate to give each parent a ten-day block of parenting time during the winter break. The magistrate ordered Bond to submit an amended shared parenting plan that comported with the magistrate's findings regarding parenting time. Finally, with regard to child support, the magistrate deviated downward from the guideline child support amount and ordered Bond to pay $600 per month effective January 1, 2013.[2] The trial court approved and adopted the magistrate's decision on the same day that it was filed.

---

[1] At the time the guardian made her recommendation, the applicable local rule was former Loc.R. 22 of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch. Loc.R. 22.1 replaced former Loc.R. 22 effective January 1, 2015. Both Loc.R. 22.1 and former Loc.R. 22 set forth the model parenting time schedule.

[2] All child support payments entail a processing fee. For ease of discussion, we will not refer to that processing fee when discussing child support amounts. Additionally, all child support amounts discussed in this decision are the amounts due when private insurance is in effect.

{¶ 11} Bond complied with the magistrate's order that he file an amended shared parenting plan. The magistrate then reviewed the amended plan. On October 21, 2014, the magistrate issued a decision finding the amended plan in Andrew's best interest and adopting that plan as the shared parenting decree. The trial court approved and adopted the magistrate's decision on the same day that it was filed.

{¶ 12} Pandolfi objected to both of the magistrate's decisions. The trial court held a hearing on Pandolfi's objections. At the hearing, both Pandolfi and Bond testified. In a judgment issued June 12, 2015, the trial court found one of Pandolfi's objections moot and denied the remaining objections.

{¶ 13} Pandolfi now appeals the June 12, 2015 judgment, and she assigns the following errors:

> ASSIGNMENT OF ERROR NO. 1
>
> THE TRIAL COURT UTILIZED THE IMPROPER TEST AND INCORRECTLY ORDERED THE SURNAME OF THE MINOR CHILD BE CHANGED.
>
> ASSIGNMENT OF ERROR NO. 2
>
> THE TRIAL COURT INCORRECTLY FORCED THE PARTIES INTO SHARED PARENTING IN LIGHT OF THE PARTIES' ACKNOWLEDGED CONTENTIOUS RELATIONSHIP AND POOR COMMUNICATION.
>
> ASSIGNMENT OF ERROR NO. 3
>
> THE TRIAL COURT FAILED TO ORDER ANY RESTRICTIONS REGARDING APPELLEE'S FATHER DESPITE THE GUARDIAN'S RECOMMENDATION.
>
> ASSIGNMENT OF ERROR NO. 4
>
> THE TRIAL COURT IMPROPERLY APPROVED AND ADOPTED A PARENTING PLAN THAT PROVIDED APPELLANT WITH LITTLE MEANINGFUL OPPORTUNITY TO RETURN TO HER HOME IN PUERTO RICO AT ANY TIME WITH THE MINOR CHILD.

ASSIGNMENT OF ERROR. NO. 5

THE TRIAL COURT IMPROPERLY AWARDED A RETROACTIVE MODIFICATION OF, AND DEVIATION IN, CHILD SUPPORT WITHOUT CONSIDERING APPELLANT'S COURT-ORDERED OBLIGATIONS DURING THE PENDENCY OF THE LITIGATION.

ASSIGNMENT OF ERROR NO. 6

THE TRIAL COURT ERRED IN FAILING TO FIND THE SIGNIFICANT LAPSE OF TIME BETWEEN THE CONCLUSION OF TRIAL AND THE ISSUANCE OF THE MAGISTRATE'S DECISION, COUPLED WITH POST-TRIAL CHANGES OF CIRCUMSTANCES, REQUIRED RETURN OF THE MATTER TO THE MAGISTRATE TO HOLD A FULL EVIDENITARY HEARING.

{¶ 14} By her first assignment of error, Pandolfi argues that the trial court abused its discretion in changing Andrew's surname to "Bond-Pandolfi de Rinaldis." We disagree.

{¶ 15} Whether or not a newborn's mother was married at the time of conception or birth or between conception and birth, "the child shall be registered" through a birth certificate that contains "the surname designated by the mother." R.C. 3705.09(F)(1) and (2). By enacting this provision, the General Assembly ensured that mothers can give their children any surname they choose. *In re Change of Name of Halliday*, 11th Dist. No. 2005-G-2629, 2006-Ohio-2646, ¶ 3, fn. 1. Consequently, " 'the initial determination of a child's proper surname is entirely within the mother's discretion.' " *Id.*, quoting *Weese v. Griesheimer*, 4th Dist. No. 98CA2436 (Mar. 11, 1999).

{¶ 16} A child's surname, however, is not immutable. A father may seek to change the surname appearing on the child's birth certificate when pursuing a judgment establishing the existence of the father/child relationship.[3] When issuing such a judgment, a trial court may include provisions concerning "any [ ] matter in the best interest of the child." R.C. 3111.13(C). Within this broad allocation of authority is the ability to "determine the surname by which the child shall be known after establishment

---

[3] Alternatively, a minor's parent, legal guardian, or guardian ad litem may apply to the probate court for a change of the minor's name. R.C. 2717.01(B).

of the existence of the parent and child relationship, and a showing that the name determination is in the best interest of the child." *Bobo v. Jewell*, 38 Ohio St.3d 330 (1988), paragraph one of the syllabus.

{¶ 17} The parent who seeks to change the child's surname bears the burden of presenting sufficient evidence to affirmatively demonstrate that the change is in the child's best interest. *D.W. v. T.L.*, 134 Ohio St.3d 515, 2012-Ohio-5743, ¶ 17. To determine whether a name change is in the child's best interest, a trial court must consider: (1) the length of time that the child has used the surname; (2) the effect of a name change on the father/child and mother/child relationships; (3) the identification of the child as part of a family unit; (4) whether the child's surname is different from the surname of the child's residential parent; (5) the embarrassment, discomfort, or inconvenience that may result when a child bears a surname different from the residential parent's surname; (6) the preference of the child if the child is of an age and maturity to express a meaningful preference; (7) parental failure to maintain contact with and support the child; and (8) any other factor relevant to the child's best interest. *Id.* at ¶ 13, 16-17. When reviewing a trial court's decision that a name change is in a child's best interest, an appellate court applies the abuse-of-discretion standard. *Id.* at ¶ 10.

{¶ 18} Here, Pandolfi first argues that the trial court erroneously concentrated on whether a name change would cause Andrew to suffer negative consequences, rather than whether a name change served Andrew's best interest. We disagree. The trial court applied the above factors, to the extent that they bore relevance to this case, to determine whether a change of surname was in Andrew's best interest. Thus, the trial court engaged in the proper analysis.

{¶ 19} Next, Pandolfi argues the evidence does not support the trial court's decision to change Andrew's surname. Again, we disagree. Bond testified that he wanted Andrew to have both his and Pandolfi's last names because he believed that "it would just help [Andrew] have a connection to both of us to have both of our last names and to prevent an identi[t]y crisis later on when he becomes older." (Tr. at 649.) This testimony substantiates the trial court's conclusion that combining both parents' surnames in Andrew's surname will reflect and bolster Andrew's connection with both his father and mother.

{¶ 20} Moreover, the Supreme Court of Ohio has expressed a preference for a hyphenated surname for a child of divorced or unmarried parents who is not old enough to have established an existing surname as part of his or her identity. *Knauer v. Keener*, 143 Ohio App.3d 789, 793 (2d Dist.2001) (interpreting *In re Willhite*, 85 Ohio St.3d 28 (1999)). As the Supreme Court has stated, a hyphenated surname helps a child identify with both parents. *Willhite* at 33. Additionally,

> a combined surname gives the child a greater sense of security. * * * [Further,] [t]he child with a combined surname does not have to explain why his or her last name is different [from his father's or mother's surname].
>
> A combined surname is a solution that recognizes each parent's legitimate claims and threatens neither parent's rights. The name merely represents the truth that both parents created the child and that both parents have responsibility for that child.

*Id.*

{¶ 21} We find the reasoning of *Willhite* directly applicable here. A hyphenated last name will connect Andrew equally to both parents and save him from the confusion that his original surname would have caused. Although Andrew will split his time between his parents' separate households, a hyphenated name will integrate him into both households. Moreover, Andrew will suffer negligible or no deleterious effects from the change to his surname because he is still too young to have used his surname or to fully grasp its significance to his identity. We thus conclude that the trial court did not abuse its discretion in finding that incorporation of "Bond" into Andrew's surname was in Andrew's best interest.

{¶ 22} In Pandolfi's final argument, she maintains that the trial court erred in selecting "Bond-Pandolfi de Rinaldis" as Andrew's surname because no party requested that surname. This argument focuses on an inconsequential detail in an attempt to deny Bond the general relief that he sought. Throughout these proceedings, Bond has asked only that his surname be included in Andrew's surname; he has not limited his request to one specific name. While Bond proposed the surname "Pandolfi de Rinaldis Bond" at the hearing, the surname "Bond-Pandolfi de Rinaldis" serves equally well to provide Bond the

relief that he sought.  Additionally, Bond now defends the trial court's decision on appeal, thus signaling his approval of the surname the trial court selected.

{¶ 23} Given all the foregoing, we conclude that the trial court did not abuse its discretion in changing Andrew's surname to "Bond-Pandolfi de Rinaldis."  Accordingly, we overrule Pandolfi's first assignment of error.

{¶ 24} By her second assignment of error, Pandolfi argues that the trial court abused its discretion in ordering shared parenting of Andrew.  We disagree.

{¶ 25} "An unmarried female who gives birth to a child is the sole residential parent and legal custodian of the child until a court of competent jurisdiction issues an order designating another person as the residential parent and legal custodian."  R.C. 3109.042(A).  Custody, therefore, defaults to the mother when a child is born to an unmarried mother.  *Williams v. Tumblin*, 5th Dist. No. 2014CA0013, 2014-Ohio-4365, ¶ 21.  However, once a father obtains a judgment establishing the existence of a father/child relationship, the father may seek custody of the child.  R.C. 3111.13(C).  If the father does so, the trial court determines custody in accordance with R.C. 3109.04.  R.C. 2151.23(F)(1); *In re E.S.K.*, 10th Dist. No. 10AP-832, 2011-Ohio-3926, ¶ 10; *In re Fair*, 11th Dist. No. 2007-L-166, 2009-Ohio-683, ¶ 39.  In determining custody, the trial court "shall treat the mother and father as standing upon an equality."  R.C. 3109.042(A); *accord In re S.W.-S.*, 2d Dist. No. 2013 CA 17, 2013-Ohio-4823, ¶ 15 (holding that, pursuant to R.C. 3109.042(A), the father and mother are on equal footing when a court makes an initial custody determination for a child born to an unmarried mother).

{¶ 26} Pursuant to R.C. 3109.04(G), either parent or both parents may file a pleading or motion requesting that a trial court grant both parents shared parental rights and responsibilities for the care of a child.  If at least one parent files such a plan and that plan is in the best interest of the child and approved by the court in accordance with R.C. 3109.04(D)(1), then "the court may allocate the parental rights and responsibilities for the care of the child[ ] to both parents and issue a shared parenting order requiring the parents to share all or some aspects of the physical and legal care of the children in accordance with the approved plan for shared parenting."  R.C. 3109.04(A)(2).  In determining whether shared parenting is in a child's best interest, the trial court must

consider the factors enumerated in R.C. 3109.04(F)(1) and (2). *Graham v. Harrison*, 10th Dist. No. 08AP-1073, 2009-Ohio-4650, ¶ 11.

{¶ 27} A trial court's decision to order or reject shared parenting, like all other child custody decisions, is discretionary. *Id.* at ¶ 12; *Dannaher v. Newbold*, 10th Dist. No. 03AP-155, 2004-Ohio-1003, ¶ 63. Consequently, an appellate court reviews such a decision for an abuse of discretion. *Dannaher* at ¶ 62. When applying the abuse-of-discretion standard, an appellate court may not reverse a decision simply because it holds a different opinion regarding the credibility of the witnesses and the evidence submitted before the trial court. *Davis v. Flickinger*, 77 Ohio St.3d 415, 419 (1997). Rather, the appellate court defers to the findings of the trial court and affirms that court's judgment if the record contains substantial credible and competent evidence supporting it. *Id.* at 418.

{¶ 28} Here, Pandolfi primarily takes issue with the trial court's analysis of the factor found in R.C. 3109.04(F)(2)(a), which requires a court to consider "[t]he ability of the parents to cooperate and make decisions jointly, with respect to the children." With regard to that factor, the trial court stated:

> The Court finds that both parties are caring and appropriate parents. Any hindrance to cooperation can be overcome with mutual respect and long-term collaboration. While the parties have differing parenting and communication styles, they are both intelligent enough to realize that it is in their minor child's best interest to have a close and bonded relationship with each parent.

(June 12, 2015 Judgment Entry at 6.) Pandolfi argues that the trial court's analysis is little more than a "pep talk" and does not reflect reality.

{¶ 29} The evidence establishes that Bond and Pandolfi have different approaches to parenting, which causes tension and conflict. The guardian best summarized the problem when she wrote:

> Mother's style [of parenting] can be described as very particular and highly organized, whereas Father is more lax. Mother domineers Andrew's parenting and when Father attempts to provide input, he is often shut down. Father, at times, grows defensive when Mother provides him with feedback, which he interprets as critiques, while at other times[,] he appears to just acquiesce in order to prevent any conflict.

(Pl.'s Ex. 1, Report & Recommendation of the Guardian ad Litem at 9.)

{¶ 30} Given the dynamics of this situation, the instances of lack of cooperation in the record all occurred when Bond failed to do what Pandolfi told him to do. Pandolfi complained about Bond (1) failing to rotate Andrew's car seat when she asked him to, (2) refusing to take Andrew's temperature after she called and asked him to, (3) refusing to wake Andrew to give him medication at the scheduled time, but rather waiting to administer the medication until Andrew awoke naturally. Bond, however, often cooperates with Pandolfi. Each time Bond exercises parenting time, he completes a detailed log of Andrew's activities. When Pandolfi wanted to travel to Puerto Rico to attend a friend's wedding, Bond postponed his parenting time so she could take Andrew with her. Also, at Pandolfi's request, Bond exercised his parenting time at Pandolfi's house after Andrew underwent surgery.[4] Thus, the parties' differences do not completely stifle cooperation.

{¶ 31} In addition to differing parenting styles, the parties have difficulty communicating. Pandolfi stated that she communicates well with Bond, but Bond testified that he feels that she often attacks him. Bond apparently responds to these perceived attacks by limiting his interaction with Pandolfi, because she alleged that he refuses to speak with her. Bond stated they do talk when he picks Andrew up or drops him off, but usually not about issues in conflict. Bond denied Pandolfi's contention that he attempted to limit their communication to email only.

{¶ 32} Undisputedly, the parties are not models of cooperation. The trial court recognized this when it referred to the parties' "differing parenting and communication styles." However, despite their past behavior, the trial court concluded that both parents were intelligent enough to recognize that cooperation was in Andrew's best interest. The evidence supports this conclusion and shows that the parties are capable of cooperation. We thus find no abuse of discretion in the trial court's determination that the parties have the capacity to cooperate given their shared love for Andrew.

---

[4] Pandolfi complains that Bond refused to permit her to take Andrew on a vacation to Canada, but the record contains no evidence regarding this alleged incident.

{¶ 33}    Next, Pandolfi argues that the trial court erred in ordering shared parenting largely, if not solely, to prevent her from relocating to Puerto Rico with Andrew. We are not persuaded.

{¶ 34}    In addition to gauging the parents' ability to cooperate, a trial court must also consider four other factors to determine whether shared parenting is in a child's best interest.    R.C. 3109.04(F)(2).    Those factors include the ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent; any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent; the geographical proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting; and the recommendation of the guardian. *Id.*

{¶ 35} In considering the factors, the trial court found that both parties expressed the desire that the other play a significant role in Andrew's life.  The trial court also found that the parties live only 2.8 miles apart, which allows easy, quick movement between the parties' households.  Finally, the trial court found that the guardian recommended shared parenting, and the court concurred with guardian's concern that moving Andrew to Puerto Rico would interfere with Bond's ability to maintain a good relationship with him.

{¶ 36} Pandolfi disputes none of the trial court's findings, and all militate in favor of shared parenting.  While the trial court considered how Pandolfi's planned move would impact the parties, the trial court did not fixate on the move.  Rather, the trial court incorporated its consideration of the possible relocation into the broader analysis that R.C. 3109.04(F)(1) and (2) require.

{¶ 37} Furthermore, if the trial court had wanted to prevent Pandolfi from relocating Andrew to Puerto Rico, it did not need to order shared parenting in order to accomplish that.  The trial court could have designated Pandolfi as Andrew's residential parent and legal custodian as long as she resided in central Ohio, and designated Bond as Andrew's residential parent and legal custodian if Pandolfi relocated outside of central Ohio. *See Rarden v. Rarden*, 12th Dist. No. CA2013-06-054, 2013-Ohio-4985, ¶ 17 (no abuse of discretion in conditioning the mother's status as residential parent and legal custodian upon her return to Ohio); *Brown v. Brown*, 2d Dist. No. 2012-CA-40, 2013-Ohio-3456, ¶ 16 (custody arrangement granting the mother the status of residential

parent and legal custodian if she remained in Champaign County was not a violation of the constitutional right to travel because it was in the children's best interest to remain in Champaign County); *Lumley v. Lumley*, 10th Dist. No. 09AP-556, 2009-Ohio-6992, ¶ 7 (no abuse of discretion in conditioning the mother's status as residential parent and legal custodian on her relocation to Franklin County or a contiguous county); *Alvari v. Alvari*, 4th Dist. No. 99CA05 (Feb. 2, 2000) (holding that the trial court had the authority to name the mother the residential parent and legal custodian and, at the same time, preclude the mother from removing the children from the jurisdiction).

{¶ 38} In sum, we conclude that the trial court did not abuse its discretion in ordering shared parenting.  Accordingly, we overrule Pandolfi's second assignment of error.

{¶ 39}  By her third assignment of error, Pandolfi argues that the trial court erred in approving a shared parenting plan that did not include a provision barring Bond's father, Jeffrey Bond, from unsupervised contact with Andrew.  We disagree.

{¶ 40} Prior to trial, the guardian interviewed Pandolfi.  During that interview, Pandolfi asserted that Jeffrey was a danger to Andrew because Jeffrey suffered from Alzheimer's disease.  The guardian then spoke to Jeffrey about his health.  According to the guardian, Jeffrey admitted to her that he had Alzheimer's disease.  The guardian recommended that Bond not be allowed to leave Andrew alone with Jeffrey.

{¶ 41} At the hearing, Jeffrey testified that he does not have Alzheimer's disease but admitted that he has a family history of dementia.  Jeffrey stated that he takes the medication Aricept to prevent the onset of dementia.

{¶ 42} In her decision, the magistrate recounted Pandolfi's concern regarding Jeffrey's health and Jeffrey's testimony denying any Alzheimer's disease diagnosis.  The magistrate noted that no medical evidence substantiated Pandolfi's claim that Jeffrey had Alzheimer's disease.  The magistrate also stated that Jeffrey "appeared to have all his faculties when he testified on the witness stand."  (Sept. 30, 2014 Mag.'s Decision at 10.) Ultimately, the magistrate approved a shared parenting plan that did not include any restriction on Jeffrey's interaction with Andrew.

{¶ 43} Pandolfi objected to the magistrate's approval of a shared parenting plan on the basis that the plan did not preclude Andrew from being alone with Jeffrey.  The trial

court denied that objection. The trial court accepted the magistrate's assessment of the evidence and found that the placement of unwarranted restrictions on Jeffrey's ability to interact with Andrew would impede a normal grandfather/grandchild relationship and, thus, contravene Andrew's best interest. The trial court, therefore, also approved a shared parenting plan that did not limit Jeffrey's contact with Andrew.

{¶ 44} The trial court may not approve a shared parenting plan "unless it determines that the plan is in the best interest of the child[ ]." R.C. 3109.04(D)(1)(b). The trial court exercises its discretion when deciding whether a shared parenting plan is in the child's best interest. *Id.*; *Graham*, 10th Dist. No. 08AP-1073, 2009-Ohio-4650, at ¶ 8. Consequently, an appellate court will only reverse such a decision upon a showing of an abuse of discretion. *In re Minnick*, 12th Dist. No. CA2003-01-001, 2003-Ohio-4245, ¶ 22.

{¶ 45} Here, the trial court chose to believe Jeffrey's denial that he has Alzheimer's disease because neither Pandolfi nor the guardian presented any medical evidence establishing that Jeffrey, in fact, suffers from the disease. Under the abuse-of-discretion standard, we must defer to this evaluation of the evidence. *Davis*, 77 Ohio St.3d at 418-19. The record, therefore, lacks credible evidence that Jeffrey suffers from Alzheimer's disease. Given the state of the evidence, we conclude that the trial court did not abuse its discretion in approving a shared parenting plan that allowed Jeffrey unrestricted contact with Andrew. Accordingly, we overrule Pandolfi's third assignment of error.

{¶ 46} By her fourth assignment of error, Pandolfi argues that the trial court abused its discretion in approving a shared parenting plan that only allows for one ten-day trip to Puerto Rico every other year. This argument presumes that the trial court approved the amended shared parenting plan that Bond submitted upon the magistrate's order. However, the trial court instead approved Bond's original shared parenting plan, which was admitted as Exhibit 9 at the hearing. The original shared parenting plan follows the model parenting time schedule set forth in former Loc.R. 22 with regard to holidays and vacations. Pandolfi, therefore, may arrange a two-week vacation with Andrew every summer. Pandolfi will also receive parenting time with Andrew during one-half of every winter break, as well as the entirety of spring break every other year. The trial court found the original shared parenting plan was in Andrew's best interest because it afforded Pandolfi sufficient periods of time throughout the year to travel. We

see no abuse of discretion in this finding.  Accordingly, we overrule Pandolfi's fourth assignment of error.

{¶ 47}  By her fifth assignment of error, Pandolfi argues that the trial court erred in setting Bond's monthly child support obligation at an amount less than that owed under the temporary orders without compensating her for the expenses she incurred in complying with the temporary orders.  We disagree.

{¶ 48}  When determining child support, a trial court must "calculate the amount of the obligor's child support obligation in accordance with the basic child support schedule, the applicable worksheet, and the other provisions of sections 3119.02 to 3119.24 of the Revised Code."  R.C. 3119.02.  The child support amount that results from the use of the basic child support schedule and applicable worksheet is presumed to be the correct amount of child support due.  R.C. 3119.03.  However, a court may deviate from the guideline amount of child support if, after consideration of the factors set forth in R.C. 3119.23, the court determines that the guideline amount "would be unjust or inappropriate and would not be in the best interest of the child."  R.C. 3119.22.  The R.C. 3119.23 factors include:

> (A)  Special and unusual needs of the children;
>
> (B) Extraordinary obligations for minor children or obligations for handicapped children who are not stepchildren and who are not offspring from a marriage or relationship that is the basis of the immediate child support determination;
>
> (C)  Other court-ordered payments;
>
> (D) Extended parenting time or extraordinary costs associated with parenting time * * *;
>
> (E)  The obligor obtaining additional employment after a child support order is issued in order to support a second family;
>
> (F)  The financial resources and earning ability of the child;
>
> (G)  Disparity in income between parties or households;
>
> (H) Benefits that either parent receives from remarriage or sharing living expenses with another person;
> (I)  The amount of federal, state, and local taxes actually paid or estimated to be paid by a parent or both of the parents;

(J) Significant in-kind contributions from a parent, including, but not limited to, direct payment for lessons, sports equipment, schooling, or clothing;

(K) The relative financial resources, other assets and resources, and needs of each parent;

(L) The standard of living and circumstances of each parent and the standard of living the child would have enjoyed had the marriage continued or had the parents been married;

(M) The physical and emotional condition and needs of the child;

(N) The need and capacity of the child for an education and the educational opportunities that would have been available to the child had the circumstances requiring a court order for support not arisen;

(O) The responsibility of each parent for the support of others;

(P) Any other relevant factor.

Appellate courts review child support matters under an abuse-of-discretion standard. *Morrow v. Becker*, 138 Ohio St.3d 11, 2013-Ohio-4542, ¶ 9.

{¶ 49} Here, the calculation of child support using the child support schedule and applicable worksheet resulted in the conclusion that Bond owed $915.06 per month. However, applying the deviation factors, the magistrate found a downward deviation of $315.06 per month appropriate, making Bond's monthly child support obligation $600. The magistrate set January 1, 2013 as the effective date for the $600 per month child support payment.

{¶ 50} Pandolfi objected to the magistrate's child support calculation. In addressing that objection, the trial court considered the deviation factors and concluded that the guideline child support amount was unjust and inappropriate, or not in the child's best interest. The trial court, like the magistrate, deviated downward and ordered Bond to pay $600 per month. The trial court also set January 1, 2013 as the effective date for the monthly $600 child support payment.

{¶ 51} The trial court's determination that Bond must pay $600 per month effective January 1, 2013 resulted in a retroactive reduction of the child support owed during the pendency of the case.  Under the temporary orders, which became effective March 1, 2013, Bond paid $788.96 per month in child support, which was $188.96 more per month than Bond ultimately owed.

{¶ 52} On appeal, Pandolfi argues that the trial court erred in granting Bond a retroactive reduction without simultaneously ordering Bond to reimburse her for all the necessities for Andrew's care that she provided Bond during the pendency of the temporary orders.  The temporary orders required Pandolfi to supply Bond with the necessities for Andrew's care, which included breast milk, formula, juice, baby food, clothes, diapers, and wipes, when Bond exercised his parenting time with Andrew. Pandolfi contends that she relied on receiving $788.96 per month to budget for the expense of the necessities she provided, so she should receive reimbursement for that expense.

{¶ 53} We find Pandolfi's argument unpersuasive.  No statute requires such a reimbursement.  Moreover, on a practical level, the trial court could not consider or order reimbursement without evidence regarding the cost of the items at issue.  Pandolfi provided no such evidence.[5]

{¶ 54} Next, Pandolfi argues that:  (1) the trial court should not have considered the tax benefit she received from claiming Andrew as a dependent, and (2) a deviation in the guideline amount of child support is no longer justified because her childcare costs have changed since the magistrate issued her decision.  These arguments exceed the parameters of the assignment of error.  Pursuant to App.R. 12(A)(1)(b), courts of appeal must "[d]etermine [an] appeal on its merits on the assignments of error set forth in the briefs under App.R. 16."  Thus, generally, courts of appeal will rule on assignments of error only, not mere arguments.  *Thompson v. Thompson*, 196 Ohio App.3d 764, 2011-

---

[5] Pandolfi contends that she did not present such evidence because she was not called upon to do so.  This argument misses the point.  Pandolfi raised the lack of reimbursement in her objection, and thus, she had the obligation to support her argument with evidence.  Nevertheless, Pandolfi failed to prove the amount of her expenses when the trial court allowed her to introduce additional evidence at the hearing held on March 24, 2015.

Ohio-6286, ¶ 65. Because Pandolfi's arguments do not correlate with her assignment of error, we decline to consider them.

{¶ 55} In sum, we find no abuse of discretion in the trial court's determination of child support. Accordingly, we overrule Pandolfi's fifth assignment of error.

{¶ 56} By Pandolfi's sixth assignment of error, she argues that the trial court erred in not returning the matter to the magistrate for a full evidentiary hearing given the lengthy period of time that elapsed between the end of hearing and the issuance of the magistrate's decision. We disagree.

{¶ 57} Civ.R. 53(D)(4)(b) sets forth the actions a trial court may take after a magistrate has issued a decision.[6] These actions include the ability to take additional evidence or return the matter to the magistrate. *Id.* Here, Pandolfi did not request the return of the matter to the magistrate. Pandolfi instead asked the trial court itself to accept evidence of the events that had occurred since the conclusion of the hearing before the magistrate. The trial court granted Pandolfi the relief that she sought; it accepted additional testimony from her at the March 24, 2015 hearing on her objections.

{¶ 58} Because Pandolfi did not ask the trial court to return the case to the magistrate, we find no error in the trial court's failure to take that action. Accordingly, we overrule Pandolfi's sixth assignment of error.

{¶ 59} For the foregoing reasons, we overrule Pandolfi's six assignments of error, and we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.

*Judgment affirmed.*

SADLER and LUPER SCHUSTER, JJ., concur.

_____

[6] We note that Pandolfi relies on Juv.R. 40, not Civ.R. 53. We question the applicability of the Ohio Rules of Juvenile Procedure to this proceeding. *See* Juv.R. 1(C)(3) and (4). However, as the relevant parts of Juv.R. 40 and Civ.R. 53 are identical, we need not decide this issue.