[Cite as *In re E.M.T.*, 2025-Ohio-4638.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

| | |
|---|---|
| IN THE MATTER OF:<br><br>THE NAME OF E.M.T. | **CASE NO. 2025-P-0016**<br><br>Civil Appeal from the<br>Court of Common Pleas,<br>Probate Division<br><br><br>Trial Court No. 2024 NC 00065 |

## OPINION AND JUDGMENT ENTRY

Decided: October 6, 2025
Judgment: Affirmed

*Amanda J. Lewis*, Paoloni & Lewis, 250 South Water Street, P.O. Box 762, Kent, OH 44240 (For Appellee, Julie M. Helsel).

*Oliver T. Koo*, 250 South Chestnut Street, Suite 23, Ravenna, OH 44266 (For Appellant, Yvan M. Thornhill).

JOHN J. EKLUND, J.

{¶1} Appellant father, Yvan Thornhill, appeals the judgment entry of the Portage County Court of Common Pleas, Probate Division, denying his Application for Change of Name of Minor (Application) from E.M.T. to K.M.T. (D.O.B 2-16-2023). The trial court denied the Application because it found that Appellant's Application was barred by res judicata as Appellant had already litigated the issue of E.M.T.'s name change in the Portage County Court of Common Pleas, Domestic Relations Division, in a parentage action that Appellant brought against Appellee mother, Julie Helsel.

{¶2} Appellant has raised three assignments of error, arguing that the trial court erred as a matter of law by determining that his Application was barred by res judicata, that the trial court ignored Appellant's factual contention that the parties intended to litigate E.M.T.'s first and middle name change in the probate court because the domestic relations court informed the parties that it lacked jurisdiction over first and middle name changes in parentage actions, and that the trial court erred by finding that res judicata applied when a child's best interest can supersede res judicata.

{¶3} Having reviewed the record and the applicable caselaw, we find Appellant's assignments of error to be without merit. First, the domestic relations court had jurisdiction to address Appellant's prayer for relief to change the child's first and middle names. Second, Appellant is barred by issue preclusion from relitigating the child's name change because Appellant entered into a Shared Parenting Agreement that provided "[t]he child's name shall be [E.M.T.]." Finally, Appellant filed the Application only 42 days after the parties entered into the Shared Parenting Plan, and Appellant has not identified any change in circumstances affecting the best interest of the child.

{¶4} Therefore, we affirm the judgment of the Portage County Court of Common Pleas, Probate Division.

## Substantive and Procedural History

**The Parentage Action:**

{¶5} On June 2, 2023, Appellant filed a Complaint for Parentage, Allocation of Parental Rights, and Responsibilities/Custody, and Parenting Time/Companionship and/or Visitation in the Portage County Court of Common Pleas, Domestic Relations Division.

**{¶6}** In his prayer for relief, among other things, Father sought to change the minor child's name from E.M.H. to K.E.T. and to be named as the child's father on the birth certificate.

**{¶7}** As resolution to Appellant's parentage Complaint, the parties entered into a Shared Parenting Plan. Article XVI, Item 3 of the Shared Parenting Plan provided that "[p]arents reserve the right to modify this Shared Parenting Plan if it is in the best interests of the child. Parents Agree that no subsequent amendment, change or addition shall be binding upon either parent unless reduced to writing and signed by both parents." Article XVI, Item 5 provided the "[t]he child's name shall be [E.M.T.]." The name change resulted in E.M.T.'s last name being changed to that of Appellant and no change being made to her first or middle name as Appellant had requested in his prayer for relief. Both parties signed the Shared Parenting Plan, and the domestic relations court adopted it, on April 26, 2024.

**{¶8}** Appellant did not object to the Shared Parenting Plan and did not appeal from the domestic relations court's final entry that incorporated the Shared Parenting Plan.

**The Application for Change of Name of Minor:**

**{¶9}** On July 7, 2024, Appellant filed an Application for Change of Name of Minor requesting to change E.M.T.'s name to K.M.T. in the Portage County Court of Common Pleas, Probate Division. In the Application, Appellant stated the reason for the requested name change was because it was in E.M.T.'s best interest and that "[o]riginally, her mother and I agreed upon the requested name, but mother unilaterally changed her

name. Our daughter was just born last year and if the name change was granted, it would help her relationship with her siblings and help preserve and develop our relationships."

{¶10} The matter proceeded to a hearing before a magistrate on July 31, 2024. At that time, Appellee objected to the Application and raised the issue of res judicata, arguing that Appellant was precluded from raising the issue in the probate court because it had already been litigated in the domestic relations court. The magistrate ordered the parties to brief the issue.

{¶11} On August 30, 2024, the parties filed their briefs on the issue of res judicata. Appellee attached Appellant's Complaint for Parentage and the parties' Shared Parenting Plan. She said the parties had engaged in contested litigation in the domestic relations court and had reached an agreement that "[t]he child's name shall be [E.M.T.]." Therefore, she argued that the issue was barred from being relitigated in the probate court or, in the alternative, that any additional litigation over the change of name would need to be resolved in the domestic relations court, pursuant to the parties' Shared Parenting Plan.

{¶12} Appellant's brief argued that Appellee had agreed to name the child K.E.T. while she was pregnant but instead named the child E.M.H. However, he said that during the proceedings on his parentage Complaint, "the *Magistrate* hearing the matter informed both [Appellant] and [Appellee] that he *believed* he only had jurisdiction to change the child's surname." (Emphasis added.) He argued that res judicata did not apply because the domestic relations court did not have jurisdiction to change the first or middle name of the child, and therefore the matter was properly before the probate court as the court with exclusive jurisdiction over the matter. Appellant represented that he and E.M.T.'s

siblings and extended family "know the child by the proposed name" and that the name change would "strengthen her ties with her Father's side of her family."

{¶13} On September 12, 2024, Appellant filed a Reply Brief.

{¶14} On September 17, 2024, the magistrate issued a Magistrate's Decision. The Magistrate's Decision noted that the parentage action was contested, that Appellant had sought a complete name change in the domestic relations court, and that the Shared Parenting Plan reflected a full and complete agreement that the child shall be known as E.M.T. The probate court's Magistrate's Decision determined that the domestic relations court "rendered a valid decision and had jurisdiction to decide the name change issue." Because Appellant was seeking to relitigate the same issue a mere 42 days after signing the Shared Parenting Plan, the magistrate determined that Appellant's Application was barred by res judicata.

{¶15} On October 1, 2024, Appellant filed an Objection to Magistrate's Decision.

{¶16} The trial court held an oral hearing on February 4, 2025. Appellant testified that the magistrate in domestic relations court said that the court did not have jurisdiction to address first and middle name changes and "only had jurisdiction to address a last name." He testified that he discussed this with Appellee and the Guardian Ad Litem.

{¶17} The trial court said that the parentage Complaint requested a full name change. The Shared Parenting Plan set forth the agreement of the parties to change the child's name to E.M.T. but did not mention the lack of jurisdiction to fully litigate the matter or the parties' intention to litigate the issue of the first and middle name change in the probate court.

Case No. 2025-P-0016

{¶18} On February 11, 2025, the trial court issued a Judgment Entry overruling Appellant's Objections. The trial court determined that Appellant sought to change the child's name in the parentage action, that Appellant represented that the domestic relations court did not have jurisdiction to change the first or the middle name, that the parties entered a Shared Parenting Agreement that changed the child's last name, that Appellant failed to object to or appeal that judgment in the parentage action, and that Appellant filed an application in the probate court to change the minor's first and middle name.

{¶19} The trial court concluded that the issue was barred by res judicata through issue preclusion because the parties reached a full agreement on all issues in the domestic relations court through the Shared Parenting Plan. The trial court said that it was "clear" from that agreement

> that the name change had been contemplated then agreed upon. There was no provision within the Agreed Entry [which incorporated the Shared Parenting Plan] stating that the parties were told by the Magistrate of the Domestic Relations Court that it did not have jurisdiction to change the name. The entry was silent about any jurisdictional issues. The [Shared Parenting Plan] was silent as to any discussion as it related to the name change of the minor child. Yet, [Appellant] signed the [Shared Parenting Plan] which stated that the name of the child shall be known as [E.M.T.].

{¶20} Appellant timely appealed raising three assignments of error.

## Assignments of Error and Analysis

{¶21} Appellant's first assignment of error states: "The trial court committed prejudicial error by failing to sustain Appellant's objection that the Domestic Relations Court did not have jurisdiction over the given and middle names of the minor child and finding res judicata applied."

Case No. 2025-P-0016

{¶22} The standard set forth in the statute for deciding whether a probate court may grant a name change is "proof that the facts set forth in the application show reasonable and proper cause for changing the name of the applicant." R.C. 2717.09. The applicant has the burden to affirmatively show that the name change is in the child's best interest. *D.W. v. T.L.*, 2012-Ohio-5743, ¶ 17; *In re Change of Name of Prodan to Halliday*, 2006-Ohio-2646, ¶ 18 (11th Dist.).

{¶23} R.C. 2717.02 provides that "[a] person desiring to change the person's name may file an application in the probate court of the county in which the person resides." R.C. 2717.13 provides that an application for change of name filed pursuant to R.C. 2717.02 "may be made on behalf of a minor by either of the minor's parents."

{¶24} Upon considering a proposed name change for a minor, the trial court must consider the best interest of the child. *In re Willhite*, 1999-Ohio-201, at paragraph one of the syllabus. In considering whether a proposed change in name is in a child's best interest, a trial court should consider the following factors: the effect of the change on the preservation and development of the child's relationship with each parent; the identification of the child as part of a family unit; the length of time that the child has used a surname; the preference of the child if the child is of sufficient maturity to express a meaningful preference; whether the child's surname is different from the surname of the child's residential parent; the embarrassment, discomfort, or inconvenience that may result when a child bears a surname different from the residential parent's; parental failure to maintain contact with and support of the child; and any other factor relevant to the child's best interest. *Id*. at paragraph two of the syllabus.

Case No. 2025-P-0016

{¶25} We review the trial court's decision in granting or denying a requested name change for an abuse of discretion. *In re Willoughby*, 2002-Ohio-6581, ¶ 8 (11th Dist.). An abuse of discretion may be found when the trial court "'applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact.'" *In re L.L.S.*, 2017-Ohio-7450, ¶ 20 (11th Dist.), quoting *Thomas v. Cleveland*, 2008-Ohio-1720, ¶ 15 (8th Dist.). "When an appellate court is reviewing a pure issue of law, 'the mere fact that the reviewing court would decide the issue differently is enough to find error. . . . By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error.'" *State v. Raia*, 2014-Ohio-2707, ¶ 9 (11th Dist.), quoting *State v. Beechler*, 2010-Ohio-1900, ¶ 67 (2d Dist.).

{¶26} R.C. 2717.01 vests the probate court with the exclusive jurisdiction to change a child's name, and only on a finding that such a change is in the child's best interest. *Poole v. Poole*, 2014-Ohio-5611, ¶ 9 (11th Dist.); *In re Change of Name of Malott*, 2006-Ohio-7024, ¶ 16 (12th Dist.). However, there are exceptions to this exclusive jurisdiction arising from Ohio's parentage statutes in R.C. Ch. 3111. *E.g.*, R.C. 3111.52 (providing that a child support enforcement agency may order a child's surname changed if both parties agree to the change).

{¶27} Where the parties do not agree to the name change, the Ohio Supreme Court has held that R.C. 3111.13(C), which grants a court hearing a parentage action the power to address "any other matter in the best interest of the child," permits a trial court to decide the issue of a name change at the time parentage is established. *Bobo v. Jewell*, 38 Ohio St.3d 330, 334 (1988).

Case No. 2025-P-0016

{¶28} In *Bobo,* the Ohio Supreme Court addressed "the narrow question of changing an illegitimate child's *surname* after parentage has been established." (Emphasis added.) *Id.* at 333. The Court acknowledged that R.C. 2717.01 vested the probate court with exclusive jurisdiction over "parental petitions to change the name of a minor." *Id.* However, "in the context of a parentage action pursuant to R.C. 3111.04(A)," the requested surname change was within the jurisdiction of the juvenile court. *Id*. at 334.

{¶29} The reason that a trial court would have jurisdiction to address a name change in a parentage action are unique, as recognized in *Bobo*: "The issue of what name the child should bear arises from this newly recognized relationship. If the parents disagree, then the court must intercede on behalf of the child as a disinterested arbiter." *Id.* The Court said that the typical best interest factors also applied to name changes flowing from actions under R.C. 3111.13(C), but, importantly, gave a word of "caution" to trial courts "to refrain from defining the best-interest-of-the-child test as purporting to give primary or greater weight to the father's interest in having the child bear the paternal surname." *Id.* The Court reasoned that where parents have never been married, the mother has "at least an equal interest in having the child bear the maternal surname." *Id.* The Court went on to address unique considerations implicated in the trial court's best-interest analysis regarding the child's surname. *Id.* at 335.

{¶30} *Bobo* dealt specifically with a trial court's jurisdiction hearing a parentage action under R.C. 3111.13(C) to change the surname of a child. In this sense, *Bobo* represents a limited holding dealing specifically with the issue of a surname change. However, the Court in *Bobo* was not called on to address whether the trial court's power

Case No. 2025-P-0016

under R.C. 3111.13(C) extended to first and middle names. In that sense, the holding in *Bobo* addressing only a surname is merely instructive for our inquiry.

{¶31} R.C. 3111.13(C) represents an expansive grant of jurisdiction, which gives trial courts hearing parentage actions the ability to address "any other matter in the best interest of the child." That expansive grant of jurisdiction necessarily includes the jurisdiction to change the first name of a child in a parentage action when changing the first name of the child would qualify as "any other matter in the best interest of the child." The holding in *Shuff v. Delturco*, 1991 WL 280008 (3d Dist. Dec. 30, 1991), addressing a surname change, is helpful in this analysis: "Thus, R.C. 2717.01 and R.C. 3111.13(C) neither contradict each other nor exclude the other provision from being utilized. In a parentage action, R.C. 3111.13(C) prevents the parties from wasting time and resources *by allowing all issues to be resolved within the parentage cause of action, including change of name disputes*." (Emphasis added.) *Id.* at *2.

{¶32} We therefore conclude that a trial court hearing a parentage action has jurisdiction to decide whether to grant a request for a change of first and middle name as well as the surname of a child in a parentage action.

{¶33} We come to this conclusion because the same considerations addressed in *Bobo* about what surname a child should have after establishing a "newly recognized relationship" might equally apply to a first and middle name. If the first and middle name of a child becomes an issue from the newly recognized relationship, it might require a trial court hearing a parentage action to change the first and middle name of a child. As in *Bobo*, courts should apply the best interest factors established for name changes involving minors, and courts should refrain from giving greater weight to a paternal choice

for a first name because mothers have at least an equal interest in naming a child. *See In re Willhite*, 1999-Ohio-201, at paragraph two of the syllabus.

{¶34} The trial court did not err in determining that the domestic relations court possessed the jurisdiction to address the requested name change in Appellant's prayer for relief in his parentage Complaint.

{¶35} Accordingly, Appellant's first assignment of error is without merit.

{¶36} Appellant's second assignment of error states: "The trial court committed prejudicial error by failing to overrule objections when ignoring the factual contention of Appellant that the parties intended to litigate their child's given and middle names in Probate Court and that the Domestic Relations Court informed the parties that it did not have jurisdiction over the given and middle names of minor children."

{¶37} Appellant argues that E.M.T.'s first and middle name change was not actually and directly litigated because the domestic relations court represented that it was not a court of competent jurisdiction to address that issue. He also argues that the trial court erred by ignoring his contention that the domestic relations court had told the parties that it only had the jurisdiction to address surname changes in parentage actions. Appellant argues that because the domestic relations court made this representation to the parties, the issue of E.M.T.'s first and middle name change was not fully litigated and that res judicata should not apply.

{¶38} "Res judicata ensures the finality of decisions." *AJZ's Hauling, L.L.C. v. TruNorth Warranty Programs of N. Am.*, 2023-Ohio-3097, ¶ 15. "It bars a party from relitigating the same issue or claim that has already been decided in a final, appealable order or a valid, final judgment in a prior proceeding and could have been raised on appeal

in that prior proceeding." *Id.* "The Supreme Court of Ohio has adopted the modern application of res judicata, which includes claim preclusion and issue preclusion." *Glenn v. Trumbull Cty. Commrs.*, 2024-Ohio-1114, ¶ 45 (11th Dist.). Claim preclusion makes "an existing final judgment or decree between the parties to litigation . . . conclusive as to all claims which were or might have been litigated in a first lawsuit." *Rogers v. Whitehall*, 25 Ohio St.3d 67, 69 (1986). Under issue preclusion, "even where the cause of action is different in a subsequent suit, a judgment in a prior suit may nevertheless affect the outcome of the second suit," *Morgan v. Natale*, 2022-Ohio-1281, ¶ 90 (11th Dist.), and the doctrine bars asserting issues "that directly stem from, and therefore were required to be asserted during a prior action." *Slodov v. Eagle Ridge Subdivision Property Owners Assn. Inc.*, 2024-Ohio-143, ¶ 34 (11th Dist.).

{¶39} "Issue preclusion, also known as collateral estoppel, prevents parties from relitigating facts and issues in a subsequent suit that were fully litigated in a prior suit." *AJZ* at ¶ 16. "Issue preclusion applies 'when the fact or issue (1) was actually and directly litigated in the prior action [and] (2) was passed upon and determined by a court of competent jurisdiction[] and (3) when the party against whom collateral estoppel is asserted was a party in privity with the party to the prior action.'" *Id.*, quoting *Thompson v. Wing*, 70 Ohio St.3d 176, 183 (1994). The application of the doctrine of res judicata and collateral estoppel raises a question of law to be reviewed de novo. *Id.*

{¶40} Appellant's Application implicates issue preclusion, and we analyze his Application in the probate court under the above standard.

{¶41} First, the record indicates that Appellant filed a parentage action in the domestic relations court and, in his prayer for relief, sought to change the child's name

Case No. 2025-P-0016

from E.M.H. to K.E.T. Nothing in the parentage action suggests that he preserved the issue of the first and middle name change for later litigation in the probate court. On the contrary, Appellant's prayer for relief contemplated a complete name change. He "actually and directly litigated" the issue of E.M.T.'s first, middle, and last name change in the prior action. *See AJZ*, 2023-Ohio-3097, at ¶ 16.

{¶42} The Shared Parenting Plan purports to be a final order determining the issue of E.M.T.'s name change. "A shared parenting plan is a contract if adopted by the court." *Graham v. Graham*, 2003-Ohio-1098, ¶ 13 (11th Dist.). "If the terms in a shared parenting plan are unambiguous, then the words must be given their plain, ordinary, and common meaning." *Id.*

{¶43} The Shared Parenting Plan failed to address Appellant's desire to litigate further changes to E.M.T.'s name and failed to reference any belief on the part of the court or the parties about the court's limited jurisdiction to address that issue. The Shared Parenting Plan is unambiguous and does not incorporate any reference to additional litigation or the domestic relations court lacking jurisdiction to fully adjudicate all issues regarding the name change.

{¶44} Appellant agreed to the Shared Parenting Plan, which stated that the "child's name shall be [E.M.T.]." A shared parenting plan represents a contract covering more than one single topic. To allow a party to relitigate a single topic of a shared parenting plan in a separate court would violate the principles of res judicata.

{¶45} Second, the name change itself was passed upon and determined by a court of competent jurisdiction. Although Appellant argues that the magistrate of the domestic relations court represented a different view of the court's jurisdiction, as we have

Case No. 2025-P-0016

discussed above, the domestic relations court did in fact have the jurisdiction to address a complete name change.

{¶46} Appellant testified at the hearing that the domestic relations magistrate informed him that it did not have the jurisdiction to change E.M.T.'s first or middle name. The parties adopted a Shared Parenting Plan that provided that the child's name shall be changed from E.M.H. to E.M.T. However, Appellant's reliance on the representations of the law as expressed through the magistrate's beliefs, rather than rulings, is not determinative. A court speaks through its journal entries. *State v. Liddy*, 2022-Ohio-4282, ¶ 64 (11th Dist.). The domestic relations court never issued any judgment entry reflecting that it did not have jurisdiction to address the child's name change. Appellant did not object to the Magistrate's Decision in the domestic relations court and did not appeal the judgment in the domestic relations court. The domestic relations court passed upon and determined the name change issue before Appellant filed his Application in the probate court to change E.M.T.'s name pursuant to R.C. Ch. 2117. *See AJZ*, 2023-Ohio-3097, at ¶ 16.

{¶47} Finally, Appellant and Appellee were the same parties and were in privity to each other in the prior action. *See id.*

{¶48} Based on the foregoing, Appellant's Application is barred by res judicata.

{¶49} Accordingly, Appellant's second assignment of error is without merit.

{¶50} Appellant's third assignment of error states: "The trial court committed prejudicial error by failing to overrule objections and finding res judicata applied when a minor child's best interest can supersede res judicata."

Case No. 2025-P-0016

{¶51} Appellant argues that res judicata does not apply to cases in domestic relations court regarding custody and visitation disputes because those matters often require revisitation to ensure the best interest of the child are being met.

{¶52} Appellant argues that "a change in the stance of Appellant or [Appellee] regarding the child's given and middle names could also constitute a change in circumstance that would preclude the application of res judicata because use of the doctrine is obstructing a potential name change that would serve the best interest of the child."

{¶53} Appellant cites *In re Application for Change of Name of McGowan*, 2005-Ohio-2938 (7th Dist.), for the proposition that a name change in a probate court is not barred by res judicata where there has been a prior parentage action. However, in *McGowan*, the parties never addressed a name change whatsoever in a non-contested parentage action. *Id.* at ¶ 11. Two years later, the father sought to change the child's surname after "changed circumstances and a changed core of facts." *Id.* at ¶ 12-13.

{¶54} In contrast, Appellant filed the Application only 42 days after the parties entered the Shared Parenting Plan. Appellant has not provided any factual basis for us to conclude that a change in circumstances has occurred, and we will not speculate as to what possible changes could occur after the completion of a parentage action that would rise to the level of a "change in circumstances" warranting a name change that would be in the best interest of a child.[1] Therefore, *McGowan* is inapposite to our analysis.

---

1. We also note the ongoing jurisdiction of the Domestic Relations Court to modify a prior decree allocating parental rights and responsibilities where "based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, . . . a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and . . . the modification is necessary to serve the best interest of the child." R.C. 3109.04(E)(1)(a).

Case No. 2025-P-0016

{¶55} Accordingly, Appellant's third assignment of error is without merit.

{¶56} For the foregoing reasons, the judgment of the Portage County Court of Common Pleas, Probate Division, is affirmed.


ROBERT J. PATTON, P.J.,

SCOTT LYNCH, J.,

concur.

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, Appellant's assignments of error are without merit. It is the judgment and order of this court that the judgment of the Portage County Court of Common Pleas, Probate Division, is affirmed.

Costs to be taxed against Appellant, Yvan M. Thornhill.



JUDGE JOHN J. EKLUND

PRESIDING JUDGE ROBERT J. PATTON,
concurs

JUDGE SCOTT LYNCH,
concurs

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2025-P-0016